# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Mitchell R. Lingo,    Case No. 3:13CV452

    Plaintiff

    v.    **ORDER**

Carolyn Colvin,
Acting Commissioner of Social Security,

    Defendant

The Social Security Administration (SSA) denied plaintiff Mitchell Lingo's claim for disability insurance benefits and supplemental security income. Plaintiff appealed to this court, 42 U.S.C. § 405(g), and the Magistrate Judge's Report and Recommendation (R&R) concluded that I should affirm that decision. (Doc. 15). Plaintiff filed timely objections. (Doc. 16).

For the reasons set forth below, I respectfully reject the Magistrate Judge's recommendation and remand this case to the SSA.

## Background

The R&R sets forth the factual and procedural background in detail, so I summarize only the relevant evidence.

Plaintiff is a forty-nine-year-old man who has received only a minimal education. Beginning in kindergarten, plaintiff had "extreme difficulties in learning to read or write"; he still could not read or write when he started second grade. (Doc. 15 at 5). Plaintiff attended special classes for slow

learners and had to repeat two grades. In high school, plaintiff was frequently absent and earned poor grades. In the end, plaintiff dropped out of school after the eleventh grade.

In October, 1972, when he was eight, plaintiff took the Wechsler Intelligence Scale for Children; he had a verbal IQ of 84, a performance IQ of 72, and an overall IQ of 76. When plaintiff was retested in 1978, at the age of fourteen, he had a full-scale IQ of 72. His arithmetic skills were on par with a third grader's, and his reading skills were worse than a kindergartner's.

The record shows that plaintiff has enjoyed only sporadic employment. In 1991, he earned $21.25 while working at Taco Bell; the next year, he earned $580.00 working for a landscaping service. Plaintiff then worked for three years at Little Sisters of the Poor, but his subsequent employment history consisted mainly of short-term assignments. In January, 2006, after a stint at Cooper Tire, plaintiff left his position to care for his ailing mother.

In December, 2008, plaintiff met with psychologist Christopher Layne. Dr. Layne evaluated plaintiff and found "minor evidence of retardation." (Doc. 11 at 350). Layne also administered the Wechsler Adult Intelligence Scale, which established that plaintiff's verbal IQ was 66 and his full-scale IQ was 72. Dr. Layne opined that plaintiff's behavior "suggests borderline retardation." (*Id.* at 353).

Plaintiff applied for disability benefits in December, 2009, alleging that he had been disabled as of January 31, 2006. The SSA denied the application, and plaintiff requested a hearing before an administrative law judge (ALJ).

The ALJ heard plaintiff's case in December, 2011. With counsel's assistance, plaintiff argued that he was mentally retarded as defined in Listing 12.05C and thus conclusively disabled. Under that Listing, a claimant will be deemed disabled if, *inter alia*, his mental retardation initially

manifested before the claimant's twenty-second birthday. 20 C.F.R. 404, Subpart P, Appendix 1, § 12.05.

Despite plaintiff's reliance on Listing 12.05C, the ALJ did not recognize that mental retardation was an issue in plaintiff's case:

> ALJ: He's not alleging disability before age 22, is he?
>
> [Counsel]: Well, we are respectfully maintaining that he meets 12.05. There are valid IQ scores in the record that show he is below 70. And so we are respectfully maintaining a 12.05. So I don't know if you think you need the school records for that or not.
>
> ALJ: Well, I mean if you were referring to a time period before he reached age 22 then I'd see school records being relevant, but at this point in time I don't see how they're going to help us.

(Doc. 11 at 31-32).

After the hearing, the ALJ denied plaintiff's claim for benefits. At the first step of the SSA's five-step analysis for resolving benefits claims, the ALJ found plaintiff had not engaged in substantial gainful activity since January 31, 2006. At the second step, the ALJ determined plaintiff suffered from six severe impairments: 1) organic mental disorder; 2) affective disorder; 3) Bell's palsy; 4) lower-back pain; 5) obesity; and 6) arthritis. According to the ALJ, these impairments were severe because they "significantly interfere[d] with [plaintiff's] ability to engage in basic work-related activities." (*Id.* at 12).

At the third step, the ALJ found that "the record does not specifically establish that [plaintiff] has an impairment that meets or medically equals the severity of one of the listed impairments[.]" (*Id.* at 13). The ALJ did not mention Listing 12.05C, let alone explain why plaintiff failed to satisfy it.

3

At the final steps of the analysis, the ALJ concluded plaintiff was not disabled because: 1) he had the residual functional capacity to perform light work; and 2) "there are jobs that exist in significant numbers in the national economy that [plaintiff[ can perform[.]" (*Id.* at 20).

Plaintiff requested review of the ALJ's decision, but the Appeals Council denied that request. He then brought this suit under 42 U.S.C. § 405(g), contending that the Commissioner's decision should be reversed and the case remanded either for an award of benefits or further proceedings. Plaintiff argued, *inter alia*, that the ALJ's failure to consider whether he met Listing 12.05C was "plain error." (Doc. 12 at 22).

Now before me is the Magistrate Judge's R&R recommending I affirm the Commissioner's decision. Although the Magistrate Judge recognized the ALJ failed to address Listing12.05C, she found the error harmless because the record "showed conclusively that [plaintiff] did not meet the onset requirement either directly or circumstantially." (Doc. 15 at 21). According to the Magistrate Judge, "under the rules, the qualifying IQ scores derived from testing before the age of 22 must be between 60 through 70 conclusive." (Doc. 15 at 22). Because plaintiff's IQ scores before his twenty-second birthday were higher than 70, the Magistrate Judge determined plaintiff could not satisfy "the threshold IQ standard" required to satisfy Listing 12.05C. (*Id.*).

**Analysis**

"In Social Security cases, the Commissioner determines whether a claimant is disabled within the meaning of the [Social Security] Act and therefore entitled to benefits." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). I review the Commissioner's decision to determine whether "it is supported by substantial evidence and was made pursuant to proper legal standards." *Id.*

Because plaintiff filed timely objections, I must conduct a de novo review of those parts of the R&R to which he specifically objects. 28 U.S.C. § 636(b)(1).

### A. IQ Tests During the Developmental Period

Plaintiff's primary objection is to the Magistrate Judge's harmless-error determination. He contends there is no requirement that a claimant proceeding under Listing 12.05C must introduce an IQ score that was obtained before his twenty-second birthday and between 60 and 70. Therefore, plaintiff argues, I cannot excuse the ALJ's failure to consider Listing 12.05C on grounds that he did not produce such a score.

The Commissioner's response does not address this argument or otherwise defend the basis of the Magistrate Judge's ruling. Rather, the Commissioner urges me to overrule the objection "[f]or the reasons set forth in [her] opening brief[,]" which concern plaintiff's alleged failure to prove mental retardation. (Doc. 16 at 1).

> Under Listing 12.05C:
>
> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in [paragraphs] A, B, C, or D are satisfied.
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. 404, Subpart P, Appendix 1, § 12.05.

A claimant who invokes Listing 12.05C has the burden to satisfy each requirement in the Listing, including the age-of-onset requirement. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

5

After careful review of the record, the R&R, and the relevant case law, I respectfully disagree that the ALJ's failure to address Listing 12.05C was harmless.

"While the claimant *may* use a qualifying IQ score before the age of 22 to demonstrate that his subaverage intellectual functioning initially manifested itself during his developmental period, a claimant is by no means *required* to produce an IQ score obtained prior to age 22." *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) (emphasis in original). Such a requirement would wrongly "foreclose recovery by all who were unfortunate enough to lack early access to appropriate testing." *McPeek v. Sec'y of Health & Human Servs.*, 19 F.3d 19, *2 (6th Cir. 1994).

All that is required to satisfy the age-of-onset requirement is "a factual finding that the onset of impairment occurred before the age of 22." *Boyd v. Astrue*, 2011 WL 1004562, *4 (E.D. Pa.). Accordingly, plaintiff's failure to produce a qualifying IQ score obtained during his developmental period does not preclude him, as a matter of law, from satisfying Listing 12.05C.

Nor do I agree that a claimant's non-qualifying IQ score (i.e., an IQ score higher than 70) obtained during the developmental period "conclusively establishes" that he cannot satisfy the age of-onset requirement. (Doc. 15 at 21).

First, neither the Magistrate Judge nor the Commissioner provides any authority for that proposition. In fact, plaintiff cites one case – and I have found two more – in which a district court ordered the ALJ to consider whether the claimant satisfied Listing 12.05C even though the claimant obtained a non-qualifying IQ score during the developmental period. *Velez v. Astrue*, 2013 WL 321552, *2-5 (W.D.N.Y.) (remanding for consideration of 12.05C issue even though plaintiff's IQ at ages six and twelve was 72 and 78, respectively); *Boyd*, *supra*, 2011 WL 1004562, *3-4

(remanding for consideration of 12.05C issue even though plaintiff's IQ in second and third grades was 71 and 73, respectively); *Rhoads v. Comm'r of Soc. Sec.*, 2010 WL 5855980, *2 (W.D. Mich.) (remanding for consideration of 12.05C issue even though plaintiff's IQ at age seventeen was 73), *adopted by* 2011 WL 690025 (W.D. Mich.).

Were a non-qualifying, developmental-period IQ score conclusive on the age-of-onset requirement, there would have been no basis to order a remand in *Velez*, *Boyd*, and *Rhoads*.

Second, focusing on the non-qualifying IQ score to the exclusion of other evidence that may be relevant to the age-of-onset requirement is inconsistent with the substantial evidence standard.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984). Importantly, the evidence must be substantial in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.*

Accordingly, in addressing whether plaintiff's mental retardation manifested before age twenty-two, the decision-maker must address not only the non-qualifying IQ score, but also the evidence that plaintiff "function[ed] in the slow learning intellectual range" and attained only a 66 on an IQ test administered in 2008. (Doc. 15 at 21); *see also Boyd*, *supra*, 2011 WL 1004562, *4 ("The ALJ, on remand, should consider all evidence, including all three I.Q. tests on record and Boyd's school records, to make a factual finding as to whether Boyd's mental condition equals Listing 12.05(C).").

For these reasons, plaintiff's non-qualifying, developmental-period IQ score does not foreclose, as a matter of law, a finding that plaintiff meets Listing 12.05C. Therefore, I respectfully

reject the Magistrate Judge's conclusion that the ALJ's failure to address Listing 12.05C was harmless.

### B. Insufficient Evidence of Mental Retardation

The Commissioner suggests three reasons why I should find the ALJ's error harmless: 1) plaintiff cannot satisfy Listing 12.05C because he was never diagnosed with mental retardation; 2) the ALJ adequately discussed the evidence relevant to Listing 12.05C; and 3) plaintiff's evidence is insufficient to prove mental retardation.

"There is no authority for the proposition that [a claimant] must be able to point to a *diagnosis* of mental retardation in order to satisfy [listing 12.05]." *Thomas v. Comm'r of Soc. Sec.*, 2010 WL 1254788, *11 (N.D. Ohio). To the contrary, "[t]he Commissioner's reasoning . . . begs the question. Listing 12.05C *defines* mental retardation; it does not require a claimant to prove mental retardation *in addition* to satisfying that definition." *McClellan v. Astrue*, 804 F. Supp. 2d 678, 692 (E.D. Tenn. 2011) (emphasis in original). I therefore reject this argument.[1]

Moreover, while the Commissioner maintains that the ALJ "adequately discussed the evidence relevant to Listing 12.05C" (Doc. 13 at 10), she does not say where in the record that discussion occurred. Nor can I find such a discussion in the ALJ's written opinion.

I recognize that, in some cases, the ALJ's failure to make specific mention of Listing 12.05C will not require a remand, provided that the ALJ otherwise discusses the evidence relevant to that Listing. *See, e.g.*, *Alcorn v. Astrue*, 2008 WL 1790192, *5 (E.D. Ky.) (no remand required where

---

[1] Notably, the Commissioner has conceded in at least two cases (though not this one) that a diagnosis of mental retardation is *not* required to satisfy Listing 12.05C. *Kiser v. Colvin*, 2013 WL 5488525, *7 (E.D. Tenn.) ("The Commissioner acknowledges that a formal diagnosis of mental retardation is not necessary to qualify under Listing 12.05C[.]"); *Thomas*, *supra*, 2010 WL 1254788, *11 (same).

ALJ discussed claimant's IQ history and borderline intellectual disorder without referring specifically to Listing 12.05).

But that line of authority is inapplicable here, where the ALJ made no mention of the evidence bearing on plaintiff's 12.05C claim. *Dexter v. Astrue*, 2012 WL 1893497, *3-4 (D. Me.) (although ALJ's discussion of claimant's activities of daily living could support conclusion that claimant did not meet Listing 12.05C, "the crucial point here is that the [ALJ] did not say that; he did not mention Listing 12.05C at all").

Finally, the Commissioner's argument that "[p]laintiff is not entitled to disability benefits under Listing 12.05C" is beside the point. (Doc. 13 at 13). In making this argument, the Commissioner notes, *inter alia*, that plaintiff: 1) stopped working to take care of his sick mother, not because of a mental disability; 2) can drive a car and handle cash; 3) socializes with friends and family; and 4) can understand and follow oral (but not written) instructions. The Commissioner also appears to recognize that there is evidence in the record supporting plaintiff's position.

Nevertheless, while the Commissioner's arguments that plaintiff does not satisfy Listing 12.05C "are not entirely unpersuasive, counsel's arguments cannot cure a deficient opinion by offering explanations never offered by the ALJ." *Oddo v. Astrue*, 2012 WL 7017622, *6 (N.D. Ohio). Thus, "to complete the analysis that the Commissioner is suggesting at this time – to apply the facts of this case to Listing 12.05C for the *first time* and conclude that it does not apply would be a de novo review. As such, [I am] constrained from considering this argument." *Fury v. Comm'r of Soc. Sec.*, 2012 WL 4475661, *3 (N.D. Ohio) (emphasis in original).[2]

---

[2] For this reason I also overrule plaintiff's objection that he is entitled to judgment finding that he meets Listing 12.05C. Whether plaintiff meets that Listing is for the ALJ to decide in the first instance.

9

### C. Whether Plaintiff "Medically Equals" Listing 12.05C

Finally, plaintiff contends the ALJ erred in failing to consider not only whether he "meets" Listing 12.05C, but also whether he "medically equals" that Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (claimant can prove disability by presenting "medical findings equal in severity to all of the criteria for the one most similar listed impairment") (emphasis omitted).

However, plaintiff failed to raise that issue in his merits brief and has not developed any argument in his objection showing how he equals Listing. This objection thus comes too late. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-518 (6th Cir. 2010).

### Conclusion

It is, therefore, ORDERED THAT

plaintiff's objections (Doc. 16) be, and the same hereby are granted to the extent he requests a remand to the ALJ. On remand, the ALJ must consider the argument squarely presented to him more than two years ago: whether plaintiff is disabled under Listing 12.05C.

In all other respects the objections are overruled.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge